CLEORA CURRIE, as Administratrix of the Estate of JOHN G. CURRIE, Deceased, Respondent, v. INTERNATIONAL MAGAZINE Co., INC., Appellant.

(Argued February 19, 1931; decided March 24, 1931.)

*Stephen Callaghan* and *Alfred W. Andrews* for appellant. The decedent and the operator of the elevator were fellow-servants in the same employment at the time of the accident. (*Baldwin* v. *Abraham,* 57 App. Div. 67; 171 N. Y. 677; *Zurich G. A. & L. Ins. Co.* v. *Watson Elevator Co.,* 253 N. Y. 404; *Mollino* v. *Ogden & Clarkson Corp.,* 243 N. Y. 450; *Breslin* v. *Sparks,* 97 App. Div. 69; *Wyllie* v. *Palmer,* 137 N. Y. 248; *Higgins* v. *Western Union Telegraph Co.,* 156 N. Y. 75; *Wolfe* v. *Mosler Safe Co.,* 139 App. Div. 848; *Quinn* v. *National Sugar Refining Co.,* 102 App. Div. 47; *Matter of De Noyer* v. *Cavanaugh,* 221 N. Y. 273; *Matter of Schweitzer* v. *Thompson & Morris Co.,* 229 N. Y. 97; *Jaabeck* v. *Grane's Sons Co.,* 206 App. Div. 574.) The trial court committed reversible error in admitting in evidence rule 14 of the Elevator Rules of the City of New York. (*Kennahan* v. *City of N. Y.,* 162 App. Div. 364; *East* v. *Brooklyn Heights R. R. Co.,* 195 N. Y. 409; *Sarconi* v. *122 W. 26th St. Corp.,* 241 N. Y. 340; *Schumer* v. *Chaplin,* 241 N. Y. 346.)

*Russel S. Coutant, Theodore Kiendl, Edward C. McLean* and *Coulter D. Young* for respondent. Decedent and the operator of the elevator were not fellow-servants. (*Matter of Brown* v. *St. Vincent's Hospital,* 222 App. Div. 402; *Zurich General Accident Co.* v. *Watson Elevator Co.,* 253 N. Y. 404; *Wyllie* v. *Palmer,* 137 N. Y. 248; *Cannon* v. *Fargo,* 222 N. Y. 321; *Matter of Sullivan* v. *Glens Falls Portland Cement Co.,* 202 App. Div. 854; 234 N. Y. 552; *Bartolomeo* v. *Bennett Contracting Co.,* 245 N. Y. 66; *Sanford* v. *Standard Oil Co.,* 118 N. Y. 571; *Johnson* v. *Netherlands A. S. Navigation Co.,* 132 N. Y. 576; *McNamara* v. *Leipzig,* 227 N. Y. 291; *Bloss* v. *Pure Oil Co.,* 232 N. Y. Supp. 332.) It was not error to admit rule 14

of the Elevator Rules in evidence. (*Sarconi* v. *122 West 26th Street Corp.*, 241 N. Y. 340; *Losie* v. *Royal Indemnity Co.*, 183 App. Div. 744; *Cohalan* v. *N. Y. Press Co.*, 212 N. Y. 344; *Schumer* v. *Caplan*, 241 N. Y. 346; *Depeyster* v. *Columbian Ins. Co.*, 2 Caines, 85; *Lee* v. *Vacuum Oil Co.*, 7 N. Y. Supp. 426; 126 N. Y. 670; *Brown* v. *Bowen*, 30 N. Y. 519; *Cundill* v. *Lewis*, 245 N. Y. 383; *Tochman* v. *Brown*, 1 J. & S. 409; *Hawley* v. *City of Gloversville*, 4 App. Div. 343; *Beacon Falls Rubber Shoe Co.* v. *Burns*, 79 App. Div. 639; *Gill* v. *Erie R. R. Co.*, 151 App. Div. 131; *Hankowska* v. *Buffalo Savings Bank*, 155 App. Div. 694; *Wood* v. *Wyeth*, 106 App. Div. 21; *Fitzsimmons* v. *Isman*, 166 App. Div. 262; 219 N. Y. 610; *Kopper* v. *City of Yonkers*, 110 App. Div. 747; 188 N. Y. 592.)

O'BRIEN, J. Defendant owned an apartment house at 471 Park avenue in the borough of Manhattan and retained Huberth & Huberth to manage it. They collected rents, hired, discharged and paid the superintendent, doormen, elevator attendants and all other operatives, purchased supplies, caused repairs to be made, and attended to the wants of tenants. For such services they received as commission a sum equal to three per cent of the gross rentals and remitted the net proceeds to defendant. They performed similar services in respect to a number of buildings, one of which belonged to defendant and the rest to other owners. In their employment was John G. Currie who is described as a supervisor in an executive capacity. His duties consisted in visiting the various properties which Huberth & Huberth managed, obtaining reports from superintendents, ascertaining work to be done, arranging for its performance and recommending the hiring and discharge of persons engaged in the administration of these buildings. Among those whom he recommended for employment was Robert Greig, who worked as a handy man at 471 Park avenue.

Greig was ignorant of the ownership of the building and never received orders from any one except Currie and the superintendent. His wages were paid to him in cash by the superintendent.

On one of Currie's visits to 471 Park avenue, he requested Greig to run a service elevator to the fourteenth story and assist him in the removal of an ice box to the basement. While they were engaged in loading the refrigerator onto the elevator and while it projected several inches from the floor of the hallway into the shaft, they discovered that the floor of the elevator was not flush with the floor of the hallway, but that it stood four or five inches below it. Greig started the elevator with the purpose of bringing it flush with the hallway, but instead of regulating it so that it would stop at the proper grade, he allowed it to ascend too far. It struck the projecting end of the ice box, overturned it, crushed Currie and inflicted fatal injuries. Issues relating to Greig's negligence and Currie's freedom from contributory negligence were resolved in favor of plaintiff. The evidence created questions of fact and the jury was so instructed. Among the other controlling issues in the case are the questions whether Greig was the servant of defendant or of Huberth & Huberth, whether he and Currie were, in any event, fellow-servants, and whether the admission in evidence of a municipal rule based upon an ordinance was error.

Huberth & Huberth cannot be regarded as independent contractors in procuring for the owner the services of Greig. They acted only as agents and managed nineteen or twenty buildings in addition to 471 Park avenue. Their services were directed toward the benefit of the owners. These agents maintained their own office organization of employees, including Currie, which enabled them to administer the affairs of their various principals. When they purchased coal or oil for heating any of the buildings, these, as well as other supplies, became the

property of the owners of the buildings. The agents had no interest in them. When they engaged workmen to operate elevators, engines and boilers, to act as superintendents, doormen and porters or to perform other services necessary to the proper management of these buildings, the persons so engaged likewise became the employees of the owners. If this defendant had retained a single individual, instead of a partnership with an extensive organization, to act as its agent in the management of its property, scarcely could any contention be made that such an individual would have become the master and the persons engaged by him in behalf of defendant his servants. Such power of control as Huberth & Huberth exerted over the staff of defendant's building was derived entirely from the authority with which their principal clothed them as agent, and it was used for the benefit of defendant rather than that of the agents. If Greig were not an employee of defendant, then it had no employees at 471 Park avenue and its policy for workmen's compensation insurance covering employees at that address was entirely unnecessary. The fact that by that policy it recognized employees in that building as its own contributes assistance to the solution of a problem in which some degree of doubt might perhaps otherwise be involved. Huberth & Huberth's functions were similar to, if not identical with those conferred upon real estate agents which were considered in *Zurich G. A. & L. Ins. Co.* v. *Watson Elevator Co.* (253 N. Y. 404). All their efforts were expended in behalf of defendant as owner and Greig was the servant of defendant and not of the agents. In *Mollino* v. *Ogden & Clarkson Corp.* (243 N. Y. 450) the agents were held liable for injury to a pedestrian caused by the fall of a chimney. Their liability was based upon a specific obligation which they had assumed by contract to make repairs. No issue of master and servant was there involved. Here the elevator was in perfect condition and the question is directed

to the identity of the master of him who negligently operated it.

While Greig was beyond doubt in the general employment of defendant, Currie was equally beyond doubt in the general employment of Huberth & Huberth. Neither entered the special employment of the other's master. Although the purpose of removing the ice box is not disclosed by any evidence, we may assume that its removal formed part of a routine detail connected with the management of the apartment house and was performed at the request of some tenant. It, therefore, constituted work for defendant, and Greig, being in its general employment, was not transferred to the employment of another. When he was engaged in performing defendant's work he remained defendant's servant. The ultimate control of his conduct and his retention in defendant's service rested with defendant (*Bartolomeo* v. *Bennett Contracting Co.*, 245 N. Y. 66), acting through its agents. Currie's employment also was permanent. His duties required him to represent his firm in supervising eight or nine buildings. As he proceeded from one to the other he was not transferred in the course of a day's work to the service of eight or nine different masters. His manual labor in moving the ice box was not part of his duty either to his masters or to their principal. His function was to supervise, he received no compensation for physical work and was a mere volunteer. Defendant could not discharge him or control him. It might complain to his master and if its complaints were to go unheeded, it could terminate its contract of agency with the master. Until he should be discharged by Huberth & Huberth he remained their servant and their power of control is presumed to have continued. (*Bartolomeo* v. *Bennett Contracting Co., supra.*)

On the trial, counsel stipulated that the service elevator which was operated by Greig at the time of the accident was designated by the bureau of buildings as a passenger

elevator. The evidence proves that it was used for freight and also for the transportation of employees of defendant and of the tenants. That it was a passenger as well as a freight elevator, therefore, must be concluded. Rule 14, adopted by the Board of Standards and Appeals, pursuant to an ordinance, provides that passenger elevators shall be provided with gates and that they shall be closed by the operator before the car is put in motion. Against defendant's objection and exception this rule was admitted in evidence. The elevator, while designated a passenger elevator, was in fact, as the evidence shows, a service elevator. At times it was used exclusively to carry freight, again exclusively to carry employees and sometimes to carry freight and employees together. On the occasion of Currie's death it was in use for no purpose except the transportation of the ice box. Currie was even less a passenger than the plaintiff in *Sarconi* v. *122 W. 26th St. Corp.* (241 N. Y. 340). The plaintiff in that case was in the act of stepping into the car when the injury occurred, but this plaintiff's intestate had made no effort to go aboard and remained several feet distant from it. The reason for Rule 14 lies in the effort to protect passengers and when no passenger was aboard and this service elevator was in use for freight and for nothing except freight, the facts no longer came within the intent and application of the rule. The *Sarconi* case controls the decision here. From every point of view, the rule seems, on the facts of this case, to be wholly irrelevant. Failure to obey it was not the cause of the accident. The projection of the ice box into the car and its sudden dislocation by the rapid rise of the car to a height too great for safety caused the death of Currie. As long as the refrigerator extended into the car, the gate could not have been closed. As we said in the *Sarconi* case, the verdict might have been the same even if no error had been committed, for it is amply sustained by the evidence. Again we say, as we then said, that

the defendant had a substantial right to have the regulations governing passenger elevators kept out of the case.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., CRANE, LEHMAN and KELLOGG, JJ., concur; POUND and HUBBS, JJ., not sitting.

Judgments reversed, etc.