AIME BOURCHEIX, Respondent, *v.* WILLOW BROOK DAIRY, INC., Appellant.

(Argued May 1, 1935; decided May 28, 1935.)

*Daniel Mungall, Ralph O. L. Fay* and *James A. Nooney* for appellant. Plaintiff failed to establish negligence on the part of defendant, and the verdict on such issue is without evidence to support it. (*Gimenez* v. *Great A. & P. Tea Co.,* 264 N. Y. 390; *Glenn* v. *Oakdale Contracting Co.,* 257 N. Y. 497; *Schmidt* v. *City of New York,* 179 App. Div. 667; *Zotto* v. *Merkel Bros., Inc.,* 229 App. Div. 793; *Chysky* v. *Drake Bros. Co.,* 235 N. Y. 468; *Ash* v. *Childs Dining Hall Co.,* 231 Mass. 164; *Potts* v. *Pardee,* 220 N. Y. 431; *St. Andrassy* v. *Mooney,* 262 N. Y. 368; *Hardie* v. *Boland Co.,* 205 N. Y. 336; *Ruback* v. *McCleary, Wallin & Crouse,* 220 N. Y. 188; *Ruppert* v. *Brooklyn Hts. R. Co.,* 154 N. Y. 90; *Griffen* v. *Manice,* 74 App. Div. 371; 174 N. Y. 505; *Cantor* v. *National Surety Co.,* 208 App. Div. 370.) The trial court committed reversible errors in its charge. (*Gimenez* v. *Great A. & P. Tea Co.,*

264 N. Y. 390; *Lane* v. *City of Buffalo*, 232 App. Div. 334; *Murray* v. *Rosenheim*, 212 App. Div. 858; 241 N. Y. 562; *Rosenberg* v. *N. Y. C. R. R. Co.*, 180 App. Div. 79; *Von Hulse* v. *Schmiemann*, 221 App. Div. 768.)

*Sydney A. Syme, Irvine J. Shubert, Murray I. Gurfein* and *Frank Alland* for respondent. The proof amply supports the verdict. Both on the facts and the law the judgment should be affirmed. (*Cohen* v. *Dugan Bros., Inc.*, 132 Misc. Rep. 896; 227 App. Div. 714; *Freeman* v. *Schultz Bread Co.*, 100 Misc. Rep. 528; *Ritchie* v. *Sheffield Farms Co.*, 129 Misc. Rep. 765; *Ternay* v. *Ward Baking Co.*, 167 N. Y. Supp. 562; *Reichenbacher* v. *California Packing Corp.*, 250 Mass. 198; *Rozumailski* v. *Philadelphia Coca-Cola Bottling Co.*, 296 Penn. St. 114; *Rost* v. *Kee & Chapell Dairy Co.*, 216 Ill. App. 497; *Norfolk Coca-Cola Bottling Works* v. *Krausse*, 173 S. E. Rep. 497; *Rosenswaicke* v. *Interborough R. T. Co.*, 175 N. Y. Supp. 828.) The proof was sufficient to sustain the verdict under the Agriculture and Markets Law (Cons. Laws, ch. 69). (*Abounader* v. *Strohmeyer & Arpe Co.*, 243 N. Y. 458; *Pine Grove Poultry Farm, Inc.*, v. *Newton B.-P. Mfg. Co.*, 248 N. Y. 293; *Gimenez* v. *Great A. & P. Tea Co.*, 264 N. Y. 390; *Kelly* v. *Daily Co.*, 56 Mont. 63; *Meshbesher* v. *Channellene Oil & Mfg. Co.*, 107 Minn. 104; *People* v. *Kibler*, 106 N. Y. 321; *People* v. *Girard*, 145 N. Y. 105; *Commonwealth* v. *Graustein & Co.*, 209 Mass. 38; *United States* v. *Sprague*, 208 Fed. Rep. 419; *Clark Restaurant Co.* v. *Simmons*, 29 Ohio App. 220; *Sloane* v. *Woolworth Co.*, 193 Ill. App. 620.) Even if the trial court's charge be construed as a charge upon the theory of warranty, such charge was harmless. (*Pine Grove Poultry Farm, Inc.*, v. *Newton B.-P. Mfg. Co.*, 248 N. Y. 293; *People* v. *Kibler*, 106 N. Y. 321.)

O'BRIEN, J. Plaintiff, a chauffeur and gardener, lived in the household of his employer who was a customer of defendant. A bottle of cream delivered by defendant to

plaintiff's employer was used by plaintiff and he was injured by swallowing broken glass. The evidence is that the pieces were about the size of a bean. They were not " ground glass." Evidence was introduced that there was no broken glass in the oatmeal, which plaintiff consumed with the cream, prior to its mixture with the cream, and that, after his injury, several other pieces of glass were found in the bottle. There is no claim that the bottle was chipped. When it was delivered at the home of plaintiff's employer, the top was covered by two caps secured by a ring. The broken glass was near the top of the bottle and the cream was very thick and partly frozen so that it did not freely run. For that reason plaintiff did not pour it in the usual way but removed it with a spoon. If the glass had entered the bottle at the dairy when the cream was unfrozen and liquid, would the broken pieces have remained so near the top? Were they in the bottle at the time of delivery to plaintiff's employer or were they accidentally introduced after plaintiff had removed the caps? These considerations do not appear specifically to have been brought to the jury's attention by the charge, but the court did instruct that plaintiff was not entitled to recover unless the glass was in the bottle when it was delivered.

The action is based on negligence. No other cause is alleged. Plaintiff produced testimony, the credibility of which was for the jury, that glass was in the bottle some time after he opened it. Defendant introduced evidence which on its face is impressive respecting the customary safety tests which it applied in inspecting bottles before filling and capping them. Although negligence was the sole cause of action alleged, the court charged that there was an implied warranty that the cream contained no deleterious substance harmful to the person *who uses it*. Under our recent decision in *Gimenez* v. *Great Atlantic & Pacific Tea Co.* (264 N. Y. 390) and other cases this instruction constitutes error.

Neither was there any implied warranty as to merchantable quality except to the buyer. (*Ryan* v. *Progressive Grocery Stores, Inc.*, 255 N. Y. 388.) The implied warranty in respect to food inures only to the benefit of the purchaser and no contract existed between defendant and this plaintiff. All the members of the Appellate Division recognized such to be the law but the majority were of the opinion that, assuming that the jury found that broken glass was in the bottle at the time of delivery, negligence as matter of law existed and that, therefore, the error in the charge did not affect the result.

Negligence as matter of law was inferred by the majority of the court on the theory that section 50 of the Agriculture and Markets Law (Cons. Laws, ch. 69) applies to the facts of this case. Section 50 provides: " No person shall sell or exchange or offer or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholesome milk or any cream from the same, or any unclean, impure, unhealthy, adulterated, colored, or unwholesome cream, or sell or exchange, or offer or expose for sale or exchange, any substance in imitation or semblance of cream, which is not cream, nor shall he sell or exchange, or offer or expose for sale or exchange any such substance as and for cream * * *." Section 199 of the same statute defines adulteration: " Food shall be deemed adulterated * * * 5. If it contain any added poisonous or other added ·deleterious *ingredient* which may render such article injurious to health * * *." Section 46 defines cream as a certain portion of described milk " to which no substance whatsoever has been added " except milk as limited by this section. These provisions when read together indicate that the legislative purpose was to prevent the sale of milk and cream which have been subjected to some process by which their texture had been or might be rendered spurious. Water would decrease its strength, dirt of any kind its purity and other ingredients which had mixed with and become a part of

it would impair its natural quality. These provisions do not appear to be aimed at foreign substances such as stones or tacks or broken glass which do not become part of the substance which "masquerades as cream" but were intended to preserve the quality of the liquid and to establish its standard. It was not the cream which injuriously affected plaintiff, but it was the glass which constituted no ingredient or part of the cream. In *Pine Grove Poultry Farm, Inc.*, v. *Newtown By-Products Mfg. Co.* (248 N. Y. 293) sections 128 and 130 of the Farms and Markets Law (Cons. Laws, ch. 69; now Agriculture and Markets Law) were under consideration. There, particles of steel wire had been ground so fine as to enter into and become a component of the food. Here, the pieces of glass were no element in the composition of the cream.

The question in this case, therefore, is one of common law negligence by a defendant, not in privity with plaintiff, severed from statutes relating to warranty and adulteration. That question is one of fact depending for its solution upon the quality and quantity of the proof which in turn must depend upon the degree of credibility accorded the witnesses by the jury. It should be considered uncomplicated by issues of law relating to warranty and adulteration. It is a close one and the burden of proof is of course on plaintiff. If this bottle was inspected and capped according to defendant's evidence, glass could not, in all probability, have entered the cream until after plaintiff removed the cap. The jury could accept the evidence of plaintiff's wife and another woman employed in the same household that glass remained in the bottle after some of the cream had been poured, but, in view of the tests applied by defendant in filling and bottling, the question still remains whether plaintiff has excluded the reasonable possibility that the glass in some manner might have fallen into the bottle after it had been opened. This is an essential element of plaintiff's case

and the record is silent on the subject. Plaintiff was obliged to show by a preponderance of evidence that the glass was in the bottle through some negligence of defendant. When some other cause might have existed, plaintiff is bound to exclude it. (*Hardie* v. *Boland Co.*, 205 N. Y. 336, 341.) When a fact is doubtful, and even in cases where the proof appears strong, but where the issue has been sent to the jury on an erroneous theory, we have not hesitated to reverse. (*Sarconi* v. *122 W. 26th St. Corp.*, 241 N. Y. 340; *Currie* v. *International Magazine Co.*, 256 N. Y. 106; *Owen* v. *Straight*, 267 N. Y. 453.)

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J. (dissenting). The Farms and Markets Law, section 130, reads: " No person shall sell, offer or expose for sale any concentrated commercial feeding stuffs containing * * * any substances injurious to the health of animals or having no feeding value." This court held in *Pine Grove Poultry Farm, Inc.*, v. *Newtown By-Products Mfg. Co.* (248 N. Y. 293, 296, 297), that a seller was liable to a third party for negligence in selling chicken feed containing ground wire. The party recovering for the loss of his ducks was not the direct purchaser from the seller so that the law of warranty did not apply. We said regarding such sale: " The court, adopting the theory of negligence pleaded by plaintiff, charged the rule relating to reasonable care. In view of the statute he might have correctly charged negligence as matter of law. * * * The right to maintain an action for the breach of a statutory duty is not restricted to one suffering an injury to the person. Property rights also come within the protection of a statute imposing a duty for the benefit of the general public. Such a rule has been applied by us to a violation of the Farms and Markets Law in a case where no privity of contract existed between the party guilty of the violation and the one incurring

the damage. No element of ordinary negligence is essential. Violation of the statute becomes actionable default."

This court is about to hold that the same law does not apply to section 50 of the Agriculture and Markets Law which relates to human beings instead of ducks. That section reads: " No person shall sell or exchange or offer or expose for sale or exchange, any unclean, impure, unhealthy, adulterated or unwholesome milk or any cream from the same, or any unclean, impure, unhealthy, adulterated, colored, or unwholesome cream, or sell or exchange, or offer or expose for sale or exchange, any substance in imitation or semblance of cream, which is not cream, nor shall he sell or exchange, or offer or expose for sale or exchange any such substance as and for cream * * *." (Agriculture and Markets Law, § 50.)

The facts as they come to us show that the defendant sold milk containing ground glass and that the plaintiff drank it or took it to his injury. I should think that milk or cream containing ground glass is unhealthy, impure and unwholesome. The plaintiff's doctor bills indicate what it did to him. That such a law has been passed for the benefit of the public is self-evident. (*Abounader* v. *Strohmeyer & Arpe Co.*, 243 N. Y. 458.)

Following our previous decision, the recovery in this case upon the ground of negligence and violation of statute was justified, and the judgment of the courts below should be affirmed. I, therefore, dissent from the ruling about to be made.

LEHMAN, HUBBS, CROUCH, LOUGHRAN and FINCH, JJ., concur with O'BRIEN, J.; CRANE, Ch. J., dissents in opinion.

Judgments reversed, etc.