GADWIGA BORUCKI *v.* MACKENZIE BROTHERS COMPANY, INC.

THEODORE BORUCKI *v.* MACKENZIE BROTHERS COMPANY, INC.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, JS.

Argued November 1—decided December 7, 1938.

*David R. Lessler,* for the appellants (plaintiffs).

*Lorin W. Willis,* for the appellee (defendant).

HINMAN, J. The plaintiff Gadwiga is the wife of Maryan Borucki and Theodore is their minor son living with them and other children in Stratford. The plaintiffs offered evidence that on February 8, 1936, Gadwiga gave her husband money and requested him to go to the store of the defendant, a large retail dealer in Bridgeport, and buy some minced ham and liverwurst. The husband asked a clerk for a piece of fresh liverwurst and the latter took from a show case a large piece, cut off a portion weighing about two and one-half pounds and delivered it to the husband. The liverwurst was manufactured by another concern, from whom the defendant purchased it. Gadwiga ate a slice

of it the same evening, afterward felt ill but the next morning ate another small piece and shortly thereafter removed a small piece of glass from her tongue, which was slightly cut; a physician was called and removed a small piece of glass from her upper jaw. Theodore ate some of the liverwurst and afterward felt ill, while other members of the family who did not eat of it were not affected. Both plaintiffs claimed to have suffered pain and distress and went to a hospital for observation. The defendant offered evidence and claimed to have proved that it was in no way negligent in the manner in which it kept and handled the meat and that no foreign substance entered it while it was in the defendant's possession; that after it was taken to the plaintiffs' home it was unwrapped and left open for some time before being eaten, and that an analysis of the uneaten portion disclosed no particles of glass therein.

The complaints charged, in the same count, both breach of warranty of fitness for consumption and freedom from foreign substances, and negligence in failing to discover the presence of foreign substances in the meat, but the trial court, holding that there was no evidence of negligence by the defendant, removed that issue from consideration by the jury and this is not assigned as error. As to the other ground of action, the court charged that, as the meat was bought for Mrs. Borucki by her husband, as her agent, and was sold by the defendant for human consumption, there was an implied warranty, so far as she is concerned, that it was fit for that purpose, for a breach of which the defendant would be liable. The court charged, however, that this implied warranty is incident to a contract between the parties and not applicable to a third party, that there was no privity of contract between Theodore and the defendant, which

would be necessary as a basis for an action on implied warranty, and, in consequence, a verdict for the defendant was directed in the action brought by him. This latter portion of the charge is attacked on behalf of Theodore, it being asserted that the implied warranty here involved "extends or otherwise should be held to extend to each member of the buyer's immediate family when the seller knows, expressly or by implication, that the food will be consumed by the members of the family."

When the buyer expressly or by implication makes known to the seller that food which he is purchasing is to be put immediately to domestic uses and it appears that the buyer relies upon the seller to select the food, both under the common law and the Sales Act, General Statutes, § 4635, "there is, as between the dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten, including freedom from foreign substances which may be injurious to the consumer." *Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 259, 161 Atl. 385, and cases cited. A right of recovery in tort may be available to one injured through the seller's negligence even though he is not in privity of contract with the seller. *Heinemann* v. *Barfield,* 136 Ark. 456, 466, 207 S. W. 58; *Craft* v. *Parker, Webb & Co.,* 96 Mich. 245, 248, 55 N. W. 812; *Bourcheix* v. *Willow Brook Dairy, Inc.,* 268 N. Y. 1, 5, 196 N. E. 617; 26 C. J. 783. However, a generally recognized obstacle to the extension of benefit of implied warranty beyond the purchaser is that the remedy is based on contract and therefore limited to parties and privies thereto.

The situation is well stated in *Gearing* v. *Berkson,* 223 Mass. 257, 111 N. E. 785. In that case a wife, acting as her husband's agent, bought of the defendants meat which made both husband and wife sick.

Recovery by the husband on implied warranty was affirmed, but judgment for the wife was reversed, the Supreme Judicial Court saying (p. 260): "The difficulty with [her] case on this ground is that there was no contractual relation, and hence no warranty, between Mrs. Gearing and the defendants. The only sale was that made to her husband through her as his agent; and a cause of action in contract accrued to him thereon, as above set forth. The implied warranty, or to speak more accurately the implied condition of the contract, to supply an article fit for the purpose required, is in the nature of a contract of personal indemnity with the original purchaser. It does not 'run with the goods.' Williston on Sales, § 244 [Vol. 1, 2d Ed., p. 489]." "There cannot be a warranty where there is no privity of contract." *Roberts* v. *Anheuser Busch Brewing Asso.*, 211 Mass. 449, 451, 98 N. E. 95; *Bourcheix* v. *Willow Brook Dairy, Inc.*, supra; *Nelson* v. *Armour Packing Co.*, 76 Ark. 352, 355, 90 S. W. 288; *Kress & Co.* v. *Lindsey* (C. C. A.) 262 Fed. 331, 334, 13 A. L. R. 1170, 1173. In *Welshausen* v. *Parker Co.*, 83 Conn. 231, 76 Atl. 271, it was said as to a claimed warranty in the sale of a gun (p. 233): "To sustain a finding that there was a breach of warranty, express or implied, there must have been evidence of a contract between the parties, for without a contract there can be no warranty." The evidence showed that the gun was sold by the defendant to a retailer, by it to one Koenig and by him to the plaintiff. "The warranty, if one was given, was to the [retailer] and not to the plaintiff; and he, as subvendee, has no cause of action upon the warranty."

Practically all of the numerous cases in which the doctrine of implied warranty in the sale of foods has been relied upon and applied as against a retail dealer were brought by the party who purchased the food,

either personally or through an agent. Such was the case of *Burkhardt* v. *Armour & Co.*, supra, in which the plaintiff recovered from the retailer (defendant Tea Company) for breach of implied warranty and from the named defendant for negligence. The facts stated in the opinion import and the record (Supreme Court Records and Briefs, Vol. A-18, p. 270) discloses that the trial court concluded that the plaintiff purchased the food through her daughter as her agent. Recovery by one other than the purchaser has generally been denied. Cases dealing with the general subject include the following: *Gearing* v. *Berkson,* supra; *Brussels* v. *Grand Union Co.* (N. J.) 187 Atl. 582; *Wadleigh* v. *Howson,* 88 N. H. 365, 189 Atl. 865; *Bourcheix* v. *Willow Brook Dairy, Inc.*, supra; *Ryan* v. *Progressive Grocery Stores, Inc.*, 255 N. Y. 388, 175 N. E. 322; *Wiedeman* v. *Keller,* 171 Ill. 93, 49 N. E. 210; *Sloan* v. *F. W. Woolworth Co.*, 193 Ill. App. 620; *Young* v. *Great Atlantic & Pacific Tea Co.* (Penn.) 15 Fed. Supp. 1018; *Frost* v. *Aylesbury Dairy Co., Ltd.*, L. R. (1905) 1 K. B. 608; *Jackson* v. *Watson & Sons,* L. R. (1909) 2 K. B. 193. For other cases see notes, 13 A. L. R. 1176; 74 A. L. R. 343. See also Melick, Sale of Food and Drink, p. 82 et seq. Some cases, contrary to *Welshausen* v. *Parker Co.*, supra, and *Nelson* v. *Armour Packing Co.*, supra, have held a manufacturer liable, for breach of implied warranty, to the purchaser through a retailer; e.g., *Catani* v. *Swift Co.*, 251 Pa. St. 52, 56, 95 Atl. 931; *Cudahy Packing Co.* v. *Baskin,* 170 Miss. 834, 838, 155 So. 217; *Davis* v. *Van Camp Packing Co.*, 189 Iowa 775, 796, 176 N. W. 382.

In most of the cases in which judgment in favor of a stranger to the contract has been sustained it appears upon analysis that recovery has been based upon negligence or other tort instead of upon breach of warranty. *Boyd* v. *Coca Cola Bottling Works,* 132 Tenn.

23, 29, 177 S. W. 80; *Freeman* v. *Schults Bread Co.*, 163 N. Y. S. 396; *Parks* v. *C. C. Yost Pie Co.*, 93 Kan. 334, 337, 144 Pac. 262; *Eisenbeiss* v. *Payne*, 42 Ariz. 262, 270, 25 Pac. (2d) 162; *Ritchie* v. *Sheffield Farms Co., Inc.*, 222 N. Y. S. 724, 726. Intimations as to extension of benefit of the warranty to parties other than the purchaser, as in the *Eisenbeiss* and *Ritchie* cases, supra, and the summary holding in *Davis* v. *Van Camp Packing Co.*, supra, 796, that "the question as to privity is not controlling" as to recovery upon warranty by a daughter of the actual purchaser, appear to assume, without obviating the limitations inherent in rights arising from contract relations, that the right of recovery is the same as if the injury had been to the buyer. 13 A. L. R. 1176.

As the ground of action relied on here patently is breach of contract of implied warranty, there is no occasion to consider whether or not, as the plaintiffs claim, because statutes (General Statutes, § 2442 and § 2436 [Fifth]) prohibit the sale of food containing any deleterious ingredients under penalty (General Statutes, § 2442) a party injured by a violative act or omission has a right of tort action based on a violation of the statute. See *Aldrich* v. *Howard*, 7 R. I. 199, 214; *Minutilla* v. *Providence Ice Cream Co.*, 50 R. I. 43, 144 Atl. 884. The third party beneficiary rule is not available since any benefit accruing to third parties would be merely incidental and the contract of sale was not intended to create any obligation of the seller to them. *Byram Lumber & Supply Co.* v. *Page*, 109 Conn. 256, 260, 146 Atl. 293; *Baurer* v. *Devenis*, 99 Conn. 203, 121 Atl. 566; Restatement, 1 Contracts, § 133. There was no error in the charge as to implied warranty.

The plaintiffs having on direct examination testified to the time they were in the hospital, their treatment

there, and their condition, the defendant, as a part of its defense, offered the original hospital records pertaining to the plaintiffs as patients; also, for the purpose of showing what analysis of the uneaten portion of the liverwurst disclosed, it offered the testimony of a state chemist from the laboratory where the analysis was made, who identified a record as the original kept by the laboratory. The plaintiffs objected to the admission of these records on the ground that, not being "books of account," they were not within the scope of § 1675c of the Cumulative Supplement, 1935, and so not admissible, and assign error in admitting them in evidence. This statute is printed as a footnote to *Weller* v. *Fish Transport Co., Inc.,* 123 Conn. 49, 59, 192 Atl. 317. It sufficiently appears in the record in the present case, by concession as to the hospital records and by evidence as to record of the analysis, that the entries were made in the regular course of business and at the time of the "act, transaction, occurrence or event" or within a reasonable time thereafter, and that the trial judge so found, so that the deficiency noted in the *Weller* case does not exist here.

Under § 5878 of the General Statutes, which was the predecessor of § 1675c, supra, neither the hospital records (except as to the dates of admission and discharge, *Sickmund* v. *Connecticut Co.,* 122 Conn. 375, 383, 189 Atl. 876) nor that of the laboratory analysis would have been admissible. *Jordan* v. *Apter,* 93 Conn. 302, 307, 105 Atl. 620; *Chernov* v. *Blakeslee,* 95 Conn. 617, 618, 111 Atl. 908. However, the wording of the new statute "definitive of the entries to which it may be applicable is very inclusive" (*Weller* v. *Fish Transport Co., Inc.,* supra, 60) and it obviously is of much broader scope than the former statute. It was not passed as an amendment to § 5878 but as an independent enactment, and § 5878, which it superseded, was repealed

by a separate section (2). Engrossed Bills, 1931, Chap. 56. The incentive to the new legislation is more significant of its intent and scope than the history of the former statute. Considerations which led to its inception are noted in *Johnson* v. *Lutz*, 253 N. Y. 124, 126-129, 170 N. E. 517: "Under modern conditions the limitations upon the right to use books of account, memoranda or records made in the regular course of business, often resulted in a denial of justice, and usually in annoyance, expense and waste of time and energy. A rule of evidence that was practical a century ago had become obsolete. The situation was appreciated and attention was called to it by the courts and text writers. Woods Practice Evidence (2d Ed.) 377; 3 Wigmore on Evidence (1923) § 1530. The report of the Legal Research Committee of the Commonwealth Fund, published in 1927, . . . under the title 'The Law of Evidence—Some Proposals for its Reform,' dealt with the question in chapter 5. . . . At the close of the chapter the committee proposed a statute to be enacted in all jurisdictions. In compliance with such proposal the [New York] Legislature enacted section 374-a of the Civil Practice Act in the very words used by the committee. . . . The purpose of the Legislature in enacting section 374-a was to permit a writing or record, made in the regular course of business, to be received in evidence without the necessity of calling as witnesses all of the persons who had any part in making it, provided the record was made as a part of the duty of the person making it, or on information imparted by persons who were under a duty to impart such information. . . . The Legislature has sought by the amendment to make the courts practical. It would be unfortunate not to give [it] a construction which will enable it to cure the evil complained of and accomplish the purpose for

which it was enacted. In construing it, we should not, however, permit it to be applied in a case for which it was never intended." See also 14 Michigan State Bar Journal, p. 35; Report of Judicial Council of Connecticut (1930) pp. 28, 61. In *Johnson* v. *Lutz*, supra, a report of an accident made by a policeman who was not present at its occurrence, from hearsay statements of third persons, was held not to be within the statute and properly excluded.

Our § 1675c, like the New York statute, is "in the very words" of the legal research committee, and statutes which are the same in substance have been passed in other states, including Rhode Island, Public Laws, 1928, Chap. 1161; Maryland, Annotated Code, 1935 Supp., Art. 35, § 54A; Michigan, Public Acts, 1935, No. 15, § 53; Massachusetts, General Laws (Ter. Ed.) 1932, Chap. 233, § 78, although there is added (§ 79) specific provision for admission of records, kept by hospitals under statute, concerning treatment and medical history but not matters having "reference to the question of liability." In *Gile* v. *Hudnutt*, 279 Mich. 358, 364, 272 N. W. 706, it is said of the Michigan act, which "follows the model acts adopted in Maryland, New York and Rhode Island," that it enlarges the common-law and statutory shop book rule to include books or records kept not only in commerce but also in occupations and professions, and (p. 367) "As will be seen, the act contains its own limitations. It limits the admissibility of such records to any act, transaction, occurrence or event made in the regular course of any business where it was the regular course to make such record at the time of such act, transaction or occurrence or within a reasonable time thereafter." It was there held that hospital records complying with these essentials came within the provisions of the act.

Naturally other cases under such recent statutes are not numerous. *Palmer* v. *John Hancock Mutual Life Ins. Co.*, 270 N. Y. S. 10, held a hospital record admissible under § 374-a for purposes other than to prove diagnosis—privileged under another statute (Civil Practice Act, § 352). *Geroeami* v. *Fancy Fruit & Produce Corp.*, 291 N. Y. S. 837, 839, held inadmissible a hearsay statement of a bystander included in hospital records. In *Sadjak* v. *Parker-Wolverine Co.*, 281 Mich. 84, 87, 274 N. W. 719, a statement, in a hospital record, of what a decedent told the hospital authorities was held not to refer to "any act, transaction, occurrence, or event in the hospital treatment," but to be hearsay and not admissible under the statute. *Conlon* v. *John Hancock Mutual Life Ins. Co.*, 56 R. I. 88, 91, 183 Atl. 850, states that any doubt as to the admissibility of the official records of a sanitarium which were kept contemporaneously with the matters therein recorded and in the regular course of business "has . . . been removed by Public Laws 1928, Chapter 1161." See also *Wickman* v. *Bohle*, 173 Md. 694, 196 Atl. 326; *Key* v. *Cosmopolitan L. H. & A. Ins. Co.* (Mo. App.) 102 S. W. (2d) 797; *Collins* v. *Leahy* (Mo. App.) 102 S. W. (2d) 801; *Sommer* v. *Guardian Life Ins. Co.*, 300 N. Y. S. 938. *Gelderman* v. *Munson S. S. Line*, 249 N. Y. S. 920, held that, on issues of peril of the sea and defendant's negligence, entries in a ship's log were admissible under § 374-a. *Gelbin* v. *New York, N. H. & H. R. Co.* (N. Y.) 62 Fed. (2d) 500 held admissible records made by an employee of the state highway department concerning repair of railroad crossing signs. Several of the above cases involving hospital records evince a construction of the statute, which appears to be sound, limiting admissibility to entries which record details of diagnosis, treatment and

condition of the patient and other facts helpful to an understanding of the medical or surgical aspects of the case, but not including events or narrations, such as those pertaining to the occasion of the patient's resort to the hospital, having no reference to his treatment or medical or surgical history in the hospital. See also *Clark* v. *Beacon Oil Co.*, 271 Mass. 27, 30, 170 N. E. 836; *Paxos* v. *Jarka Corp.*, 314 Pa. St. 148, 152, 171 Atl. 468. We conclude that the records in question were not inadmissible on the ground upon which objection was interposed as above noted. The further objections now suggested, pertaining to some items in the hospital records and that the laboratory analysis made did not cover all of the sample submitted, not having been made on the trial are not now available to the plaintiffs.

The record of the offer and admission of the hospital records does not bear the construction claimed by the plaintiffs as limiting the purpose to affecting the credibility of the plaintiffs and there was no reason for a charge so limiting the effect of this evidence, nor, especially without request, for instruction, as the plaintiffs claim, that the records were not conclusive but to be considered and weighed along with the other evidence.

The defendant pleaded in special defenses that before this action was brought the plaintiffs received payment in satisfaction of damages for injuries from the corporation which was the original manufacturer and packer of the liverwurst and executed in its favor releases and covenants not to sue, and these releases were offered in evidence by the defendant and admitted for the purpose of mitigation of damages, only. As the verdicts and judgments in favor of the defendant stand, and the effect of this evidence was limited, both in ruling and charge, to the amount of damages,

if any were awarded, it is unnecessary to review its admissibility.

There is no error.

In this opinion the other judges concurred.