[Civil No. 3286. Filed September 21, 1933.]

[25 Pac. (2d) 162.]

A. J. EISENBEISS, Appellant, v. ALBERT
PAYNE, Appellee.

Mr. W. G. Gilmore and Mr. L. F. Gilmore, for Appellant.

Mr. Frank E. Thomas, for Appellee.

PHELPS, Superior Judge.—On the evening of February 6, 1931, the plaintiff, appellee herein, purchased from one Gunner Johnson in Bisbee, Arizona, a bottle of Coca-Cola alleged to have been bottled by defendant A. J. Eisenbeiss, doing business under the firm name and style of Cochise Coca-Cola Bottling Works, appellant, and after drinking from the bottle a portion of the contents thereof, and noticing that it did not taste right, discovered the skeleton of a mouse in the beverage yet remaining in the bottle. He thereafter instituted an action in the superior court of Cochise county seeking to recover damages for the injury which he claims to have sustained as a result of drinking a portion of the contents of said bottle, alleging:

"That as a result of drinking said beverage containing said decayed, putrefied mouse plaintiff became seriously ill, suffered severe shock to his nervous system, underwent the loss of employment, and at the time of drinking said beverage and for a considerable period of time thereafter suffered great mental pain and shock to his system in general."

Plaintiff claimed damages in the sum of $3,000. The cause was tried to a jury, and a verdict in the sum of $1,500 was returned and judgment entered thereon, from which said judgment and from the

order denying the motion for a new trial an appeal has been taken to this court.

The appellant presents for our consideration eleven assignments of error, the first of which being that the trial court erred in overruling his general demurrer to the original complaint. The complaint was amended, and defendant filed an amended answer thereto in which he failed to incorporate a demurrer. This, without doubt, resulted in a waiver of his demurrer. The amended complaint, however, clearly states a cause of action against defendant.

Assignments 2, 3, 4 and 5 are directed to the sufficiency of the evidence to sustain the verdict and judgment as rendered. Stated specifically, it is claimed that there is no evidence of negligence on the part of defendant. Proof of negligence necessary to sustain a verdict and judgment depends upon the circumstances surrounding the case. It is unquestionably the law that where a person relies upon specific acts of negligence as a basis for recovery in damages, he must both allege and prove the specific act relied upon; but where the specific act of negligence causing the injury cannot be ascertained or shown by the plaintiff, where the agencies out of which the negligence arises were within the exclusive control of the defendant, the plaintiff is neither required to allege nor prove any specific act of negligence. In such cases, ''Where the thing which caused the injury complained of is shown to be under the management of defendant or his servants and the accident is such as in the ordinary course of things does not happen if those who have its management or control use proper care, it affords reasonable evidence, in the absence of explanation by defendant, that the accident arose from want of care.'' 45 Corpus Juris 1193, § 768. In other words, when such circumstances are shown to exist, the inference arises that defendant is guilty of negligence, and, in the absence of explana-

tion by defendant, justifies a recovery in damages for such wrong. This rule of evidence is known as the doctrine of *res ipsa loquitur,* and is only applicable in a limited class of negligence cases referring to proof of general negligence as distinct from proof of specific negligence. This rule is one of necessity and cannot be invoked except in cases as above stated and where plaintiff is not in a position to show the particular circumstances which cause the offending instrumentality to operate to his injury.

It is claimed by appellant that in order for plaintiff to avail himself of the doctrine of *res ipsa loquitur* it was necessary that he allege ''That he (plaintiff) did not know the exact act or acts of negligence which produced the injury complained of and that he had no means of ascertaining them and that the agencies producing the injuries were in the exclusive possession and control of defendant.'' The plaintiff, failing to do this, is limited to proof of specific negligence.

Appellant failed to cite any authorities to sustain this contention, and the authorities, so far as our independent investigation discloses, are to the effect that it is sufficient to allege the facts from which the duty of defendant springs, the neglect of that duty, and the resulting injury, and that the allegation that the defendant in the discharge of such duty was careless, reckless, wanton and negligent is sufficient. *Queirolo* v. *Pacific Gas & Electric Co.,* 114 Cal. App. 610, 300 Pac. 487. In short, an allegation of general negligence is all that is required. Proof of facts from which the duty springs, breach of that duty and resultant injury, necessarily determine the fact of who had the management and control of the agencies producing the injuries complained of as well as the lack of opportunity of the plaintiff to know what the specific act of negligence was which caused the wrong. Applying this to the instant case, proof by plaintiff

that defendant was engaged in the business of bottling Coco-Cola for sale and consumption by the public, and that he (plaintiff) purchased a bottle thereof from a retail dealer in Bisbee, the presence of the skeleton of a dead mouse in it, and his subsequent illness resulting therefrom, necessarily determined both the fact of the control and management of the agencies out of which the injury arose, and lack of knowledge of plaintiff as to what specific act of negligence on the part of defendant caused the presence of the skeleton in the bottle.

There is no contention made that the instrumentalities employed by defendant in bottling the Coca-Cola in question were not within his exclusive management and control. The evidence, on the other hand, is conclusive that they were. Defendant, in bottling said beverage and offering it to the public for human consumption, owed to the public and to every individual who purchased such beverage a duty commensurate with the danger and the possible and probable result of a lack of care in bottling the same to prevent foreign or poisonous matter from being introduced into said beverage. In the very nature of things, plaintiff did not and could not know or ascertain the specific cause of the presence of the skeleton of a mouse in the bottle purchased by him from the retail dealer. But it is claimed that the fact that the skeleton of the mouse was found in the bottle purchased from the retail dealer is no evidence that it was present in the bottle when sold to the retailer by the defendant, although the retailer testified that "to the best of his knowledge" the bottle was in the same condition when sold to plaintiff as when purchased from defendant, it having been in his possession three to seven days. This question was squarely presented to the jury and the answer was that the mouse was in the bottle when delivered by defendant to the retailer. It occurs to us that the fact that the flesh of the

mouse was completely decomposed and had dropped
away from the bones, leaving no visible solid in the
bottle other than the bony skeleton, suggests the irre-
sistible conclusion that within three to seven days
such rapid decay could not take place in an air-tight
bottle containing nothing more potent than Coca-Cola.
The jury unquestionably considered this fact in arriv-
ing at its conclusion. In any event its finding is
amply justified by the evidence.

The remainder of the assignments of error are
predicated upon the instructions of the court. While
we would not commend the instructions as a model
for clarity, we believe that taken as a whole they cor-
rectly presented the law to the jury.

The court's instruction that the jury had no right
to take the statement of an attorney as to what the
law was except the court gives an instruction to the
same effect is undoubtedly correct and in all probabil-
ity deemed necessary by the trial judge by reason
of what he believed to be an erroneous statement of
the law by either counsel for appellant or appellee
in the presentation of his case to the jury.

In the absence of an issue having been made as to
the authority of the "agents and employees" of de-
fendant engaged in bottling the beverage in question,
no duty devolved on the trial court to qualify his
reference to such "agents and employees" by the use
of the word "authorized," as contended by appellant,
nor is there any error in the court's reference in his
instructions to loss of time or impairment of earning
capacity. An examination and analysis of this in-
struction show that the court not only did not submit
to the jury for their consideration as a measure of
damages the elements of loss of time or impairment
of earning capacity, but stated in the instruction that,
" . . . if you further believe from the evidence that
a mouse was in said bottle when the same was fur-
nished by the defendant, Eisenbeiss, to the said Gun-

ner Johnson and then furnished to plaintiff and that plaintiff was made sick from drinking said beverage containing said mouse and *suffered and lost time from the same, or his capacity to earn money was impaired thereby,* (Italics ours) . . . you will find for the plaintiff and assess damages as I will instruct you further . . . "—clearly indicating that it would instruct them thereafter as to what were the elements to be considered in arriving at the damage to be awarded to plaintiff in the event the issues were determined in his favor; and in a subsequent unnumbered instruction, designated by appellant as No. 10, the court limited the elements constituting the measure of damages to be considered by the jury to physical pain and suffering and mental pain and anguish. "Pain" and "anguish," as applied to a mental condition, are synonymous, and the incorporation by the court of the word "anguish" in connection with the word "pain" in its instruction upon the measure of damages was not error. By requiring the jury to find from a preponderance of the evidence that plaintiff lost time or had his earning capacity impaired as a condition precedent to finding a verdict in his favor, the instruction placed a burden upon plaintiff which the law did not demand of him, and was therefore distinctly in appellant's favor. The same is true of the court's instructions defining "wanton" and "gross negligence." It was not essential that the negligence of the defendant should have been either gross or wanton in order for plaintiff to recover, and the effect of the instruction, if it affected the jury at all, was to again place upon the plaintiff a burden which the law did not require him to assume.

The claim that the use of the words "represented to be refreshing and harmless" in the eleventh instruction introduces into the case the element of warranty we believe to be without foundation. While it is true that there is no allegation in the pleading that

any representations were made by defendant as to the "refreshing and harmless" character of Coca-Cola as a beverage, yet the manufacturer who places upon the market for human consumption any food or beverage impliedly represents to every individual who purchases it that it is fit for the purposes for which it is sold, which necessarily includes the representation that it is harmless, and such an instruction is properly given to the jury in defining the duty the manufacturer owes to the consumer and in fixing the degree of care to be exercised by such manufacturer in the premises. As to whether the beverage was refreshing or not is wholly immaterial, and the inclusion of the word "refreshing" in such instruction could not possibly have affected the verdict of the jury.

The consequences resulting from the sale of an impure or poison food or beverage may be so disastrous to the health of the consumer that public safety demands that there should be an implied warranty of its fitness for human consumption, and the best-reasoned authorities hold this to be the law in cases of this character: *Tomlinson* v. *Armour & Co.*, 75 N. J. L. 748, 70 Atl. 314, 19 L. R. A. (N. S.) 923; *Parks* v. *G. C. Yost Pie Co.*, 93 Kan. 334, 144 Pac. 202, L. R. A. 1915C 179; *Flessher* v. *Carstens Packing Co.*, 93 Wash. 48, 160 Pac. 14, and many others. If this doctrine is sound, and we believe it to be, then the conclusion is inescapable that in cases predicated upon negligence the duty owed to the consumer by the manufacturer of foods and beverages intended for human consumption, which we have heretofore stated to be commensurate with the danger and the possible and probable result of a lack of care, is the highest duty known to the law. And the instruction of the trial court to this effect is not error.

There is nothing in the record to indicate that the jury was in anywise influenced by passion or preju-

dice, nor is there anything to indicate that the verdict was excessive. An appellate court should not substitute its judgment for that of the jury, unless it can say with certainty that the verdict of the jury was the result of passion and prejudice, and to permit it to stand would result in gross injustice.

No reversible error being found in the record, it is ordered that the judgment of the lower court be, and the same is hereby, affirmed.

ROSS, C. J., and McALISTER, J., concur.

NOTE.—On account of the illness of Judge LOCKWOOD, Honorable M. T. PHELPS, Judge of the Superior Court of Maricopa County, was called to sit in this case.