317 P.2d 1094

**CRYSTAL COCA–COLA BOTTLING CO.,**
a corporation, Appellant,

v.

**Friou CATHEY, Appellee.**

No. 6367.

Supreme Court of Arizona.

Nov. 19, 1957.

Conner & Jones, and A. O. Johnson, Tucson, for appellant.

Martin S. Rogers, Tucson, for appellee.

PHELPS, Justice.

This appeal involves the liability of a beverage bottler to an ultimate consumer for personal injury damages sustained as a result of drinking a beverage containing a dead fly. The complaint alleges:

"* * * That the defendant is or was at all times hereinafter mentioned engaged in the bottling of, or preparation of, a beverage known as Coca Cola in individual bottles for human consumption and thereby warranted the substance contained in said bottles to be fit for human consumption.

"That on or about the 28th day of October, 1955, the plaintiff purchased a bottle of Coca Cola prepared and distributed by the defendant-company and that on said day he consumed a part of the contents of the same; that the contents of said bottle which came into the plaintiff's mouth included a dead fly; that immediately the plaintiff was made ill and continued thereafter to be extremely ill from what he had consumed and was in the process of consuming.

"That on account of the defendant's said act in providing the plaintiff with said substance in the manner stated resulting in illness to the plaintiff, causing him to suffer pain and mental anguish and loss of earnings, and as a result thereof the plaintiff was damaged in the sum of Three Thousand and No/100 ($3,000.00) Dollars."

The plaintiff, Friou Cathey, introduced evidence to show that he purchased a bottle of coca-cola from a drugstore. The salesclerk took the bottle from a cooler, opened the bottle at the cooler, and placed it on the counter about two or three feet away in front of Cathey. The bottle remained on the counter for about a minute before Cathey began to drink from it. After he had consumed about a third of the bottle something caught in his throat which caused him to spit the contents of his mouth back into the bottle. Examination revealed a dead fly in the bottle. Cathey became ill and vomited three times that evening according to his testimony and that of his wife, and he experienced spells of nausea for a week or more afterward. Evidence established that the drugstore had purchased the bottle of coca-cola from the defendant, Crystal Coca-Cola Bottling Co.

The defendant introduced evidence to show that its bottling plant was operated under sanitary conditions common to similar bottling plants with the usual inspection after washing and before filling the bottles. Defendant also presented testimony to the effect that coca-cola bottles can be opened and the cap replaced without any obvious indication of tampering.

At the close of plaintiff's case and again at the close of all the evidence, the court denied the defendant's motions for a directed verdict. The court instructed the jury on the elements of liability under implied warranty as well as in negligence. He also gave instructions on the inference which arises under the doctrine of res ipsa loquitur and when it applies and left to the jury's determination whether the plaintiff was entitled to the benefit of this doctrine.

The jury returned a verdict of $1,000 for the plaintiff and judgment was entered accordingly. The court denied defendant's motion to set aside the verdict and also denied defendant's motion for a new trial on condition that plaintiff remit $400 of

the $1,000 judgment within ten days. The plaintiff made a highly conditional offer of remittal which did not amount to an acceptance of the remittitur. The defendant appeals from the judgment and the order denying these motions.

■ Defendant-appellant sets forth thirteen assignments of error in his brief. Because each proposition of law asserted by defendant is used to support a group of these assignments, for the sake of simplicity, we shall discuss the correctness of each proposition of law in order to determine the propriety of the judgment entered.

Defendant's Proposition of Law A reads:

"There can be no action for breach of warranty of a food or beverage when there is no privity of contract between the parties."

This precise proposition has never before been presented to this court for decision. Defendant admits that there is a split of authority on this proposition. He cites the New York case of Chysky v. Drake Bros. Co., 235 N.Y. 468, 139 N.E. 576, 27 A.L.R. 1533, in support of his position. A number of other jurisdictions hold that there can be no implied warranty in the absence of privity of contract and admit of no exception in the case of foodstuffs and beverages. Birmingham Chero-Cola Bottling Co. v. Clark, 205 Ala. 678, 89 So. 64, 17 A.L.R. 667; Drury v. Armour & Co., 140 Ark. 371, 216 S.W. 40; Borucki v. MacKenzie Bros. Co., 125 Conn. 92, 3 A.2d 224; Pelletier v. Dupont, 124 Me. 269, 128 A. 186, 39 A.L.R. 972; Vaccarino v. Cozzubo, 181 Md. 614, 31 A.2d 316; Carlson v. Turner Centre System, 263 Mass. 339, 161 N.E. 245; Smith v. Salem Coca-Cola Bottling Co., 92 N.H. 97, 25 A.2d 125; Enloe v. Charlotte Coca-Cola Bottling Co., 208 N.C. 305, 180 S.E. 582; Lombardi v. California Packing Sales Co., R.I., 112 A.2d 701; Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 171 A.L.R. 1200. However, an imposing group of jurisdictions hold that there is an exception to the general rule in the case of manufacturers of foodstuffs such that an implied warranty of fitness inures to the benefit of the ultimate consumer though there be no strict privity of contract running between the manufacturer and consumer. Vaccarezza v. Sanguinetti, 71 Cal.App.2d 687, 163 P.2d 470; Heimsoth v. Falstaff Brewing Corp., 1 Ill. App.2d 28, 116 N.E.2d 193; Anderson v. Tyler, 223 Iowa 1033, 274 N.W. 48; Coca-Cola Bottling Co. v. Savage, Miss., 89 So.2d 634; Williams v. Coca-Cola Bottling Co., Mo.App., 285 S.W.2d 53; Ward Baking Co. v. Trizzino, 27 Ohio App. 475, 161 N.E. 557; Sweeney v. Cain, Tex.Civ.App., 243 S.W.2d 874. We believe that the decisions in the latter group of jurisdictions represent the more recent trend and provide the better reasoned authority. Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162. Most particularly we quote with approval from Jacob E.

Decker & Sons, Inc., v. Capps, 139 Tex. 609, 164 S.W.2d 828, 829, 142 A.L.R. 1479, as follows:

"After having considered the matter most carefully, we have reached the conclusion that the manufacturer is liable for the injuries sustained by the consumers of the products in question. We think the manufacturer is liable in such a case under an implied warranty imposed by operation of law as a matter of public policy. We recognize that the authorities are by no means uniform, but we believe the better reasoning supports the rule which holds the manufacturer liable. Liability in such case is not based on negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of the public policy to protect human health and life. It is a well-known fact that articles of food are manufactured and placed in the channels of commerce, with the intention that they shall pass from hand to hand until they are finally used by some remote consumer. It is usually impracticable, if not impossible, for the ultimate consumer to analyze the food and acertain whether or not it is suitable for human consumption. Since it has been packed and placed on the market as a food for human consumption, and marked as such, the purchaser usually eats it or causes it to be served to his family without the precaution of having it analyzed by a technician to ascertain whether or not it is suitable for human consumption. In fact, in most instances the only satisfactory examination that could be made would be only at the time and place of the processing of the food. It seems to be the rule that where food products sold for human consumption are unfit for that purpose, there is such an utter failure of the purpose for which the food is sold, and the consequences of eating unsound food are so disastrous to human health and life, that the law imposes a warranty of purity in favor of the ultimate consumer as a matter of public policy.

\* \* \* \* \* \*

"While a right of action in such a case is said to spring from a 'warranty,' it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect public health. According to Prof. Williston the law of warranty is older by a century than the action of special assumpsit, from which the modern law of contracts developed. 1 Williston on Sales, p. 368, § 195; Jeanblanc, 'Manufacturer's Liability to Persons, Other Than Their Immediate Vendees,' 24 Va.L.Rev. 134, 158, at p. 148. The action on a warranty sounded in tort was in the nature of an action on the

case for deceit, although it was not necessary to plead and prove scienter. 1 Williston on Sales, p. 371. It is believed that much of the confusion among the courts on this question is due to the failure to note this difference in the use of the term 'warranty'. It has led many courts to believe that in order to sustain an action under such a warranty there must be privity of contract and reliance on the representation. The doctrine of privity of contract and of the necessity therefor in order to sustain an action grew out of the later action of assumpsit. It applies only when one is seeking to enforce a contract. Here the liability of the manufacturer and vendor is imposed by operation of law as a matter of public policy for the protection of the public, and is not dependent upon any provision of the contract, either expressed or implied."

We hold that in the case of food, beverages, and drugs an implied warranty by the manufacturer that the goods are pure and free from deleterious foreign substances inures to the benefit of the ultimate consumer of those goods by operation of law even in the absence of privity of contract. Defendant's Proposition of Law A is rejected.

▪▪▪ Defendant's Proposition of Law B reads:

"When no proof of specific negligence is offered and plaintiff relies on the doctrine of res ipsa loquitur to establish negligence he must prove that the instrumentality causing the damage was under the exclusive control of the defendant and that the damage could not have been caused by the negligence or act of other parties."

Though this may correctly state the law in the standard classic case to which the doctrine of res ipsa loquitur applies, the requisite of exclusive control receives a special interpretation when applied to cases involving injury from food and beverages containing deleterious foreign substances. In his brief defendant directed our attention to the case of Coca-Cola Bottling Works v. Sullivan, 178 Tenn. 405, 158 S.W.2d 721, 725, which classifies cases of this sort in order to define the proper application of the doctrine of res ipsa loquitur to them. We adopt that classification as set forth in the following quote from that case:

"An examination of the reported cases suggests that confusion in application of the rule throwing on the bottler, or manufacturer, the burden of meeting a charge of prima facie, or presumptive evidence of negligence, has in part grown out of the failure to recognize differences of fact which affect the principle. At least four such essential different situations of fact are presented in the cases dealing with liability of the manufacturer to the consumer injured by foreign substances in

food and drink packages. One, where the package or bottle passes directly from the agent of the bottler or manufacturer to the consumer; and, two, where the package or bottle comes from the manufacturer so sealed, as food or drink in cans, or otherwise so constructed that its contents reach the consumer without possibility of alteration by intermediate parties, for example, glass in canned pork and beans, Campbell Soup Co. v. Davis, 163 Va. 89, 175 S.E. 743. In both of these cases the facts clearly justify the application of the res ipsa loquitur doctrine, that 'the thing speaks for itself,' applied in many of the decisions, either nominally, or in effect. * * * Third, where the foreign substance is so planted or imbedded in the article purchased by the consumer, that its physical location therein conclusively demonstrates its presence there when the article came from the manufacturer, as when found compressed within a plug of tobacco, or in a cake (of both of which the reported cases afford illustration.) Here, again, the thing speaks for itself, not only as to the negligence, but as to the prima facie responsibility of the manufacturers therefor.

"But, there is a fourth class of cases, in which the instant case falls, which presents the difficulty with which we here have to deal; the cases of soft drink, or milk bottles, or the like, enclosed by caps which it is possible to remove and replace, by the use of care. We have here a distinctive element of fact which breaks the conclusive continuity of control between the bottler and the consumer, when the physical possession has been in a third party, such as an intermediary vendor. To close this gap of control so as to make fairly applicable the rule of presumptive or prima facie negligence on the part of the bottler or manufacturer, we are of opinion that a higher degree of proof must be made that there has been no reasonable opportunity for tampering with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer."

In adopting this classification we expand it in one respect. We hold that in this fourth class of case in order to satisfy the exclusive control requisite of the res ipsa loquitur doctrine the plaintiff must either prove "that there has been no reasonable opportunity for tampering" or that there was no tampering "with the bottle, or its contents, in the interim between the physical control of the bottler or manufacturer, and that of the consumer." This is a question of fact which the plaintiff may prove by circumstantial evidence for submission to the jury under proper instructions. In the instant case the court instructed the

jury that in order for the res ipsa loquitur doctrine to apply, they must determine that the fly did not get into the bottle as a result of the intervening act of a third party and that the condition of the bottle was the same when it left the defendant bottling company's control as when it was received by the plaintiff. We believe the jury might reasonably have decided that under the circumstances there was no tampering with the bottle after it left the bottler's control. To decide that there was a tampering would require the jury to believe in this case that a person would go unobserved to the cooler behind the counter in a drugstore or the druggist or one of his employees would go to the cooler and place therein a bottle of coca-cola in which he had put a fly by removing and replacing the cap and this without being able to foretell who might be served that bottle or when it might be served. This, we submit, is too far-fetched for reasonable men to consider seriously. Defendant's Proposition of Law B does not correctly state the law applicable to this case. The trial judge placed the question of whether res ipsa loquitur doctrine applied properly before the jury on circumstantial evidence which might well justify a finding by the jury that it did apply.

Defendant's Proposition of Law C reads:

"One seeking to recover from the manufacturer of food or beverage from [sic] damages alleged to be caused by contamination thereof must prove that said food or beverage was contaminated while under the control of said manufacturer, and not subsequently."

In our consideration of Proposition of Law B we make it clear that in such a case as this the plaintiff satisfies the above proposition by showing to the satisfaction of the jury that third parties did not tamper with the bottle after it left the control of the bottler. In the instant case the very question of whether the fly was in the bottle when it left the bottler's control was presented to the jury as a basis for liability on both the theory of implied warranty and under the doctrine of res ipsa loquitur. Thus Proposition of Law C was followed and therefore affords no support for any assignments of error.

■ Defendant's Proposition of Law D reads:

"When defendant affirmatively proves freedom from negligence, plaintiff must offer evidence of negligence in order to recover."

This proposition does not adequately state the law applicable to a case in which the res ipsa loquitur doctrine properly applied has raised an inference of negligence.

"* * * We * * * refer to Mr. Prosser who ably sets out the procedural effect of rebutting evidence on the res ipsa doctrine:

" 'When the defendant in turn offers evidence to show that the event was

not due to his negligence, there is the further question of the extent to which the principle of res ipsa loquitur will survive in the face of such proof. It is generally agreed, except in two or three jurisdictions, that the burden of proof is not upon the defendant, and that he is required to do no more than to introduce evidence which, if believed, will permit the jury to say that it is as probable that he was not negligent as that he was. Against this evidence must be balanced the inference of negligence to be drawn from the circumstances of the case, which has weight so long as reasonable men may still draw it from the facts in evidence. * * *

" 'If the defendant seeks a directed verdict in his favor, he must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable men could no longer accept it. * * *' Prosser, Torts, pp. 308–309." Tiller v. Von Pohle, 72 Ariz. 11, 230 P.2d 213, 215.

We believe that defendant's evidence in this case did not "destroy any reasonable inference of negligence" hence the question was properly submitted to the jury for determination. Thus, defendant's Proposition of Law D affords no support for his assignments of error.

■ Defendant's Proposition of Law E reads:

"In an action for breach of warranty of a food or beverage, plaintiff must prove that said food or beverage was unwholesome at the time it was sold by the defendant."

We accept this as a correct statement of the law; however, the plaintiff may prove this fact by circumstantial evidence and is entitled to have it presented to the jury when, as in the instant case, the circumstances admit of such a determination by reasonable men. The trial judge submitted this question to the jury when he instructed them that the plaintiff had sustained the burden of proof on breach of the implied warranty only if they found by a preponderance of the evidence that the defendant bottling company prepared a sealed bottle of coca-cola containing a dead fly which was purchased and consumed in part by the plaintiff. Since this proposition of law was followed, it affords no support for any assignments of error.

■ Defendant's Proposition of Law F reads:

"When the damage claimed is illness, plaintiff must prove by competent medical evidence that the illness was the result of the acts complained of."

The soundness of this proposition depends upon the nature of the illness with which

the jury is concerned. Ordinarily a jury would require expert medical evidence to help it to determine whether an illness resulted from particular acts. However, we conclude, that a reasonable person does not require the aid of expert medical evidence in order to determine that the discovery of a fly in a mouthful of coca-cola caused the vomiting which immediately followed the discovery. Proposition of Law F does not support the assignments of error.

▮▮▮▮▮ Defendant's Proposition of law G reads:

"When damages are trivial and temporary, the verdict should be set aside for an excessive award."

In order to set aside a verdict and order a new trial because of bias and prejudice of the jury the damages "must be so excessive as to strike mankind, at first blush, as being beyond all measure, unreasonable, and outrageous, as such as manifestly show the jury to have been actuated by passion, partiality, prejudice, or corruption. In short, the damages must be flagrantly outrageous and extravagant * * *." Stallcup v. Rathbun, 76 Ariz. 63, 258 P.2d 821, 824. We do not consider the $1,000 award of damages by the jury to be of this character.

We find that the propositions of law which defendant offers in support of his thirteen assignments of error are either incorrect, inapplicable to this case, or were followed and that the proper rules of law were followed by the trial court. Hence the assignments of error must fail.

We believe the trial court exercised sound discretion by attempting to reduce the amount of the award to $600 by remittitur. The parties apparently did not agree to the remittitur. When the plaintiff failed to *unconditionally* accept the court's grant of the $400 remittitur, the defendant had the right to demand a new trial as to damages only under the provisions of the court's order. Instead of exercising this right the defendant appealed from the $1,000 judgment of June 8, 1956. In view of the expense plaintiff has necessarily incurred in defending this appeal we are not disposed to order a remittitur under A.R.S. § 12-2104, and the $1,000 judgment stands affirmed.

Judgment affirmed.

UDALL, C. J., and STRUCKMEYER, and JOHNSON, JJ., concurring.

WINDES, J., concurs in the result.