445 P.2d 437

**EATON FRUIT COMPANY, Shannon Tomlinson and Dick Eaton, dba Eaton Cattle Company, Appellants,**

v.

**CALIFORNIA SPRAY–CHEMICAL CORPORATION, Appellee.**

**No. 8557.**

Supreme Court of Arizona, In Division.

Sept. 26, 1968.

Rehearing Denied Oct. 29, 1968.

462

Jennings, Strouss, Salmon & Trask, Phoenix, for appellants.

Ryley, Carlock & Ralston, Phoenix, for appellee.

UDALL, Vice Chief Justice:

Eaton Cattle Company (hereinafter, Eaton) brought this action against California Spray-Chemical Corporation (hereinafter, Cal Spray) to recover $30,000 for damage to its cotton crop allegedly caused by the application of a contaminated insecticide spray. The complaint stated three counts; two in warranty and one in negligence. The trial court directed a verdict for Cal Spray on the negligence count, and the jury found for Cal Spray on the warranty counts. Eaton brings this appeal from the judgment and directed verdict.

In 1960, Eaton was in the business of growing cotton. By June of that year the cotton was growing well. In order to protect the crop from the Lygus bug, the company purchased from Cal Spray a quantity of insect spray called Diabrom. The cotton was sprayed with the Diabrom in early June, with satisfactory results. One month later, with the cotton crop progressing in a healthy condition, another insecticide, Toxaphene, was purchased from Cal Spray to control the corn earworm. The second spraying began on July 2. Slightly more than two 30-gallon drums of Toxaphene had been used when it was discovered that the cotton was being damaged by the spraying. The operation was halted and Cal Spray notified of the damage. Experts were sent to the fields to determine the cause, and the unanimous opinion was that the cotton showed symptoms of damage from two potent weed killers, 2,4–D and Silvex.

Eaton claimed that the weed killers were in the Toxaphene when it was delivered in the sealed drums to the farm. When Cal Spray denied responsibility Eaton brought suit.

At the trial, Eaton offered proof that they bought the Toxaphene to control insects, and that it was warranted to be free from any toxic substances injurious to cotton when used according to directions. The chemical was delivered to the farm in five 5-gallon sealed cans and five 30-gallon sealed drums. The spraying was done by two employees of Eaton, both experienced in the

application of liquid insecticides. A 1,000 gallon mobile nurse tank was filled with water from a 200 foot deep irrigation well, and hooked up to the recently purchased Hahn Highboy Sprayer. Thirty acres were first sprayed, using the Diabrom left from the June spraying. Then the first 30-gallon drum of Toxaphene was unsealed in the field, a clean new pump inserted into it, and a quantity mixed in the sprayer in accordance with the directions on the drum. The spraying continued for two days with Toxaphene being added as needed. The first damage began at the row where the first batch of Toxaphene was sprayed. This damage was analyzed as having been caused by 2,4–D. The damage was fairly uniform over the first several acres that were sprayed with the Toxaphene. Then, at a specific row, severe Silvex damage appeared. The Silvex damage became less severe as the spraying progressed until the operation was halted shortly after the third drum was tapped. No damage occurred to the cotton that was sprayed with the Diabrom.

The employees who did the spraying testified that they did not use any weed killers in the operation, and in fact had never used the same rig to spray for weeds. Eaton's evidence showed that the only change in the spraying operation after the Diabrom was used up was the addition of the Toxaphene. Of the three drums that were used, only two were available for samples to be taken for testing. The samples from each showed the presence of 2,4–D but no Silvex. The third drum was never found.

Cal Spray called in experts to testify in its behalf. The manager of the Cal Spray plant in California, where the Toxaphene was formulated, testified that it would be impossible for 2,4–D or Silvex to get into the drums before they were sealed at the plant. Neither Silvex nor 2,4–D were formulated or stored in the same plant and only new drums were used in the packaging of the Toxaphene. As each batch was formulated a sample was taken and tested. The test of the sample from the batch in question showed no signs of contamination. A sealed drum from the same batch was sampled and tested, and no evidence of any contamination found. Cal Spray also showed that three weeks after the damage occurred, when its experts went to Eaton's storage shed to sample the contents of the drums, they found empty and partially full cans of Silvex and 2,4–D stored near the Toxaphene. The experts testified the Silvex damage was consistent with the theory that a 5-gallon can of Silvex was poured into the rig and mixed with the Toxaphene, and the fact that the Silvex damage was not uniform showed there was a diluting factor. On cross-examination the men who did the spraying admitted that at the time of the spraying they were unaware of the danger of using weed killers on cotton.

Cal Spray did not dispute the fact that the Toxaphene would not ordinarily be injurious to cotton when used in accordance with directions. The only major dispute is the source of the weed killers. Both parties claimed they were not at fault.

Eaton's first assignment of error concerns the directed verdict. It contends that it was entitled to the benefit of the doctrine of res ipsa loquitur, and that the issue of negligence should have gone to the jury with proper instructions.

█ In determining whether it was error to direct a verdict for the defendant we must view the facts in the light most favorable to the plaintiff and assume as true not only all competent evidence introduced in plaintiff's behalf, but also all reasonable inferences that can be drawn therefrom. Heth v. Del Webb's Highway Inn, 102 Ariz. 330, 429 P.2d 442 (1967); Sturm v. Heim, 95 Ariz. 300, 389 P.2d 702 (1964).

█ Res ipsa loquitur is a rule of circumstantial evidence which permits the jury to draw a permissible inference from plaintiff's evidence, that the defendant was negligent. The inference is not dispelled by the introduction of rebuttal evidence. O'Donnell v. Maves, 103 Ariz. 28, 436

P.2d 577 (1968). Application of the doctrine requires the plaintiff to show (1) that the accident is of the kind which does not ordinarily occur in the absence of someone's negligence; (2) it was caused by an agency or instrumentality within the exclusive control of defendant; (3) it was not due to any fault of the plaintiff; and (4) plaintiff is not in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury. Capps v. American Airlines, Inc., 81 Ariz. 232, 303 P.2d 717 (1956).

The record supports Eaton's contention that requirements 1, 3, and 4, were met. Our main concern is with the fact that at the time the damage occurred the Toxaphene was not in the exclusive control of Cal Spray, but was standing in a cotton field on Eaton's farm.

We have made an exception of the exclusive control rule in the case of a bottle of soft drink which caused injury through bursting or because it was contaminated with foreign matter. Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162 (1933); Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957). In such a case the plaintiff must show there has been no reasonable opportunity for tampering, or that there was no tampering, with the bottle or its contents after the bottle left the exclusive control of the defendant. We see no reason why the same exception should not apply in the case of a sealed drum of insecticide.

Other courts have applied res ipsa to similar facts. In Burr v. Sherwin-Williams Co., 42 Cal.2d 682, 268 P.2d 1041 (1954), a case involving 2,4–D damage to a cotton crop allegedly caused by a contaminated insecticide, it was said:

"The fact that an accident occurs after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine (res ipsa loquitur) provided there is evidence that the instrumentality had not been improperly handled or its condition otherwise changed after control is relinquished by the defendant."

The same facts were involved in Grey v. Hayes-Sammons Chemical Co., 310 F.2d 291 (5 Cir. 1962) where the court said:

"Subject to the plaintiff's carrying the burden of proving negligence and subject to the plaintiff's laying the proper predicate, the doctrine of res ipsa loquitur is no less applicable to damage from sealed cans of insecticide (which could not be tampered with) as it is to injury from Coca-Cola bottles."

Eaton carefully went through each step in the spraying process and accounted for the sealed drums of Toxaphene. According to the applicators the drums were not unsealed until just before their contents were added to the spray solution. Evidence was offered to show that the contamination had not come from the water or equipment and that no weedkillers were used in the operation. We hold that a sufficient showing was made to entitle Eaton Cattle to the benefit of the res ipsa doctrine.

Generally, the inference of negligence which the doctrine makes permissible will require the court to submit the issue to the jury. However, it is not always error for the court to direct a verdict in such a case. In Tiller v. Von Pohle, 72 Ariz. 11, 230 P.2d 213 (1951), we set out the circumstances in which defendant may be entitled to a directed verdict in a res ipsa case:

"'If the defendant seeks a directed verdict in his favor, he must produce evidence which will destroy any reasonable inference of negligence, or so completely contradict it that reasonable men could no longer accept it. * * * If the defendant proves definitely by uncontradicted evidence that the occurrence was caused by some outside agency over which he had no control, * * * the inference of negligence is no longer permissible and the verdict is directed for the defendant. The res ipsa case has been overthrown by showing that it is

not a res ipsa case.' Prosser, Torts, pp. 308–309."

 Each party has presented an air tight case and one of them is obviously wrong. Cal Spray's evidence is uncontradicted, and, if believed, would exonerate it from liability. However, Eaton has presented equally uncontradicted evidence which entitled it to the permissible inference of negligence under the res ipsa doctrine. Which evidence is to be believed is a question of fact, and questions of fact, along with the weight to be given the inference, are matters for the jury. It was error to direct the verdict.

Eaton next complains that it was error for the trial court to give the following instructions to the jury:

"If plaintiffs have not proved by a preponderance of the evidence that defendant's Toxaphene product sprayed on plaintiffs' cotton contained Silvex at the time defendant delivered it to plaintiffs, defendant is not liable to plaintiffs for any amount of damages to plaintiffs' cotton caused by Silvex, and your verdict must be for the defendant in this respect.

"On the other hand, if plaintiffs have proved by a preponderance of the evidence that defendant's Toxaphene product sprayed on plaintiffs' cotton did contain Silvex at the time defendant delivered it to plaintiffs, then defendant is liable to plaintiffs for any damage to their cotton caused by such Silvex, and you should then return a verdict for the plaintiffs for the amount of damage caused to their cotton crop by such Silvex."

(The court next instructed the jury in the same manner but replaced the word Silvex with 2,4–D.)

Eaton argues it was not essential to its case at a matter of law that the poison was 2,4–D or Silvex. It is further argued that the instructions in question require the jury to find the amount of damages caused by each poison and establish a monetary value for the damage from each. Eaton contends that it did not present evidence which segregated the damage in dollar amounts as between the two types of damage and that it was not required to do so. We agree.

The complaint alleges that Eaton used Cal Spray's Toxaphene product to spray its crop for insects. The use of the spray resulted in damage to Eaton's cotton. Eaton was required to prove only the extent of the damages from the spraying of the Toxaphene. It is incidental that the damage was generally caused by Silvex and 2,4–D. We hold it was error to give the above instructions.

Reversed and remanded.

McFARLAND, C. J., and BERNSTEIN, J., concur.