494 P.2d 725

John Kenneth WALKER, Appellant,

v.

Virgil Robert McCLANAHAN, Appellee.

No. 1 CA-CIV 1600.

Court of Appeals of Arizona,
Division 1,
Department A.

March 15, 1972.

Rehearing Denied April 11, 1972.

Review Denied June 6, 1972.

Lewis & Roca, by John P. Frank, Michael J. LaVelle, David Cocanower, Phoenix, for appellant.

Dunn & Alston, by Gerald W. Alston, David R. Bailey, Phoenix, for appellee.

DONOFRIO, Judge.

This is an appeal by appellant Walker, who was the defendant in the trial court, from a jury verdict and judgment in the sum of $7,220 entered thereon in favor of appellee-plaintiff McClanahan. Plaintiff had brought an action to recover damages sustained as a result of a gunshot wound from a firearm owned by defendant. Defendant also appeals from the denial of his motion for judgment n. o. v., or in the alternate, a new trial.

Plaintiff's complaint, in pertinent part, alleges that the defendant did negligently and recklessly cause a firearm to be discharged into the face of the plaintiff, thereby inflicting bodily injury upon plaintiff. The answer denied the allegations of the complaint and set forth an affirmative defense of contributory negligence.

The facts viewed in a light most favorable to plaintiff are as follows. On the evening of June 9, 1969, the plaintiff met defendant at the Cozy Bar in Chandler. The parties had been friends for approximately eight years while attending school together. Apparently they had not seen each other for a long period of time. They began reminiscing about old school days, and during this time each party consumed two beers. Subsequently plaintiff and defendant went together to two other bars, drinking more beer at each of the latter establishments. Approximately one and a half hours later they decided to go to defendant's home in Scottsdale to pick up more cash in order to continue imbibing.

Upon their arrival at his home, defendant Walker fixed drinks for both of them and invited plaintiff to view his guns which were stored in a back bedroom. Plaintiff agreed and they went to the bedroom and inspected two weapons—Walker's .22 caliber handgun, and a rifle. Plaintiff testified that he held the handgun in the bedroom, but relinquished it to Walker before they went into the kitchen. Plaintiff asserted that he had dominion over the gun only in the bedroom. Immediately following, defendant went through the kitchen door to the backyard patio and fired the gun into the ground three times. At plaintiff's request defendant ceased this conduct and returned to the kitchen and stood to the right of plaintiff who was leaning against the kitchen sink looking straight ahead. Plaintiff recalled that the gun was placed in the vicinity of the sink, somewhere to his right. It is unclear from the record exactly how far away the defendant positioned himself from plaintiff or the gun. The next event McClanahan remembered was seeing his father in his room at Baptist Hospital in Scottsdale. There had been an explosion and a bullet from defendant's handgun entered plaintiff's face on the right side and went through his nose and part of his cheek. Plaintiff testified that as a result of the injury he cannot breathe through his right nostril; that he has a hearing problem because of a defect in his right ear; and that the pitch of his voice has become higher. At trial McClanahan's face appeared scarred and there was testimony that a skin graft could be performed, with the prognosis being a better cosmetic appearance.

The record reflects that plaintiff and defendant were the only people at defendant's house at the time of injury. Furthermore, defendant testified he cannot recall any of the events that occurred at his home on the night in question. The statement of facts which we have set forth in this opinion are based primarily upon the reconstruction of the event by plaintiff at trial. The only conflict of any substance in the record was a portion of a police report taken shortly after the shooting which stated plaintiff admitted that he shot himself. There was no testimony at trial regarding this report.

We are called upon to determine whether the trial court erred in submitting the case

to the jury on an instruction of res ipsa loquitur.

■ Traditionally in Arizona the following four elements have been required in order to invoke the doctrine of res ipsa loquitur:

1. The accident must be of a kind which ordinarily does not occur in the absence of someone's negligence.

2. It must be caused by an agency or instrumentality within the exclusive control of defendant.

3. It must not have been due to any voluntary action on the part of the plaintiff.

4. Plaintiff must not be in a position to show the particular circumstances which caused the offending agency or instrumentality to operate to his injury.

Eaton Fruit Co. v. California Spray Chemical Corp., 103 Ariz. 461, 445 P.2d 437 (1968); O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (1968); Capps v. American Airlines, 81 Ariz. 232, 303 P.2d 717 (1956).

We recognize that res ipsa loquitur has been applied to gunshot cases in other jurisdictions. Edwards v. Johnson, 269 N.C. 30, 152 S.E.2d 122 (1967); Corn v. Sheppard, 179 Minn. 490, 229 N.W. 869 (1930); Ann. Res Ipsa Loquitur—Firearms 46 A.L. R.2d 1216. In Crump v. Browning, 110 A.2d 695 (1955), the Municipal Court of Appeals for the District of Columbia quoted from Atchinson v. Dullam, 16 Ill.App. 42 (1884), as follows:

" ' . . . "Firearms are not usually discharged without the intervention of some human agency. A presumption, therefore, . . . is raised, that when such weapons are discharged while in the possession and control of another, the firing is caused either by design, carelessness, or inadvertence on his part." (citations omitted) This seems to be the rule generally followed in cases involving firearms and explosives. (citations omitted) Respected textwriters have al-

so given expression to the view that when a person is injured by discharge of a gun in the hands of one who has entire control over it, the one inflicting the injury is required to prove that the gun was not fired either intentionally or negligently but that the result was without fault on his part. Sherman and Redfield on Negligence, Rev. ed., Vol. 4, § 761; Thompson on Negligence, Vol. 1, § 787. We have no doubt at all that that [res ipsa loquitur] is the rule which should have been applied here.' "

■ Defendant argues quite strenuously that the evidence did not prove conclusively that Walker had exclusive control of the instrumentality that caused the harm. On this point the following testimony was elicited at the time of trial on direct examination of plaintiff:

"Q	What guns were shown to you?

"A	There was a hand gun and a rifle.

"Q	At that time did you handle either one of the guns?

"A	Yes, sir, I handled a hand gun.

"Q	And that was in the bedroom?

"A	Yes, sir.

"Q	Did you ever again that evening or any time handle that hand gun again?

"A	Not that I remember.

*	*	*	*	*	*

"Q	Did you see him with the hand gun outdoors?

"A	Yes, sir.

"Q	Then what happened?

"A	Well, I believe I told him that, not to do that, he was going to get us both in trouble. And I walked back in and I was leaning up against the sink and I seen him coming back in, and after that I just heard an explosion.

"Q	When you saw him coming back in, did he have the hand gun with him?

"A  To the best of my knowledge, he did.

"Q  Do you recall how much time transpired from the time that you saw Mr. Walker out in the back patio firing the weapon until you were shot, do you have a recollection of that time span?

"A  Oh, if I was guessing, I would say—

"Q  Well, don't guess. If you don't have a recollection, say so.

"A  I don't. It wasn't very long.

"Q  Did you ever handle the weapon while you were in the kitchen?

"A  No."

A leading case in Arizona regarding the control aspect of res ipsa loquitur is Eaton Fruit Co. v. California Spray Chemical Corp., supra. In that case the Supreme Court approved of the use of the doctrine notwithstanding the fact that the element which caused the harm (a barrel of contaminated insecticide) had left the defendant-manufacturer's control several weeks beforehand and was in fact situated on plaintiff's field for several weeks before it was applied to the crops which were subsequently damaged. The court cited Burr v. Sherwin-Williams Company, 42 Cal.2d 682, 268 P.2d 1041 (1954), which stated:

"The fact that an accident occurs after the defendant relinquishes control of the instrumentality which causes the accident does not preclude application of the doctrine (res ipsa loquitur) provided there is evidence that the instrumentality had not been improperly handled or its condition otherwise changed after control is relinquished by the defendant." 268 P.2d at 1044

In two earlier cases, Crystal Coca-Cola Bottling Co. v. Cathey, 83 Ariz. 163, 317 P.2d 1094 (1957) and Eisenbeiss v. Payne, 42 Ariz. 262, 25 P.2d 162 (1933), the Supreme Court did not strictly construe the exclusive control aspect of res ipsa loquitur.

We do not intend to eliminate the doctrine of exclusive control in Arizona. We do recognize that the word "control" has created problems, particularly as to the amount of activity a plaintiff may engage in without jeopardizing the chance of obtaining a res ipsa instruction. A plaintiff need not be static or entirely passive in a situation in which he is ultimately injured, but rather he must come forth with evidence that removes the inference of his own responsibility. In Prosser, Law of Torts, 3rd Ed., Ch. 6, § 39, pp. 224, 225, there is a rather critical discussion of the exclusive control doctrine itself:

"  .  .  .  'Control', if it is not to be pernicious and misleading, must be a very flexible term.

    *    *    *    *    *    *

"It would be far better, and much confusion would be avoided, if the idea of 'control' were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it."

Furthermore, Udall, Arizona Law of Evidence, § 195, n. 97, states:

"This element [control] is not always applied so as to require control at the instant of injury, it being sufficient in many situations that the instrumentality was within the exclusive control of the defendant *at the time of the negligent act.*"

We believe that the quantum of evidence produced was sufficient to show that plaintiff did not have control at the time of injury. It has been stated, and we recognize that:

"  .  .  .  Firearms, however, are dangerous instrumentalities, and since their possession or use is attended by extraordinary dangers, a person having firearms in the vicinity of others is bound

to exercise extraordinary care, sometimes described as the utmost care, or a very high degree, or the highest degree, of care. If another is injured in his person or property as a result of the discharge of firearms, even though the discharge is accidental or unintentional, provided it is not unavoidable, the person whose negligence is the proximate cause of the injury is liable in an action for damages." 94 C.J.S. Weapons § 28, pp. 525, 526.

■ Assuming that the negligent act was the firing of the gun outdoors, the defendant may be liable for any acts flowing as a consequence of a negligent act if there is no supervening cause. The plaintiff told Walker he ought to return to the house lest they get in trouble. We feel that the ensuing injury to plaintiff could reasonably have been foreseen by defendant and therefore there was no supervening cause which would defeat liability. O'Rielly Motor Company v. Rich, 3 Ariz.App. 21, 411 P.2d 194 (1966); MacNeil v. Perkins, 84 Ariz. 74, 324 P.2d 211 (1958).

■ Defendant further contends that res ipsa was inapplicable because the facts surrounding the injury were equally accessible to both parties and that, in fact, plaintiff has substantially more knowledge of the circumstances. This requirement has been imposed by Drumm v. Simer, 68 Ariz. 319, 205 P.2d 592 (1949); Throop v. F. E. Young & Co., 94 Ariz. 146, 382 P.2d 560 (1963). Even though the plaintiff is able to reconstruct the events leading up to his injury, he is unable to specify the circumstances which caused the offending instrumentality to operate to his injury. The portion of the testimony hereinafter set out indicates plaintiff's inability to explain how the gun placed on the sink shot him in the face, and from what range he was shot:

"Q    All right, but you don't know where he was on your right side, how far he was from you or what he was doing or anything of that nature, do you?

"A    No, sir.

"Q    Isn't that correct?

"A    Yes, sir.

"Q    You weren't paying any particular attention to what Mr. Walker was doing at the time you heard this bang, isn't that correct?

"A    No, sir.

"Q    Your present memory, Mr. McClanahan, is that the gun was on the sink and that Mr. Walker was on your right immediately before you were shot, isn't that correct?

"A    Yes, sir.

"Q    I take it, Mr. McClanahan, that a good deal of what happened is foggy and you are not really sure about a lot of these things, isn't that correct?

"A    Yes, sir, some of them.

"Q    As a matter of fact, you really don't know what happened that night, do you, except that you heard the bang and later found out that you had been shot, isn't that correct?

"A    I don't remember nothing later."

We believe plaintiff was sufficiently unaware of the attendant circumstances surrounding his injury. Furthermore, we recognize that this element of res ipsa loquitur has been under attack. Indeed, it may be quixotic to require that element to be complied with in order for a plaintiff to invoke the doctrine.

"Courts frequently have said, and on rare occasions have held that res ipsa loquitur cannot be applied unless evidence of the true explanation of the accident is more accessible to the defendant than to the plaintiff. It is difficult to believe that this factor can ever be controlling, or more than at best a makeweight. If

·the circumstances are such as to create a reasonable inference of the defendant's negligence, it cannot be supposed that the inference would ever be defeated by a showing that the defendant knew nothing about what had happened; and if the facts give rise to no such inference, a plaintiff who has the burden of proof in the first instance could scarcely make out a case merely by proving that he knew less about the matter than his adversary." Prosser, Law of Torts, 3rd Ed. § 39, p. 229.

■■ Defendant further contends that the court erred in giving a res ipsa loquitur instruction because in the police report, which was admitted into evidence, there was a notation that plaintiff stated he shot himself. We recognize that this statement does conflict with the testimony of the plaintiff given at the trial. It is within the province of the jury to determine the facts if they are in dispute, and we will not disturb their findings on appeal unless they are not supported by the evidence. Given the attendant circumtances of that evening, it is entirely reasonable that.the jury would discount the admission to the police officer of a statement of a wounded, intoxicated and irrational man, especially where the officer was not present to testify. Res ipsa loquitur creates an inference, and not a presumption of negligence, and it can be accepted or rejected by the jury. O'Donnell v. Maves, 103 Ariz. 28, 436 P.2d 577 (1968); Yoo Thun Lim v. Crespin, 100 Ariz. 80, 411 P.2d 809 (1966).

■ We believe the doctrine of res ipsa loquitur was applicable in the instant case as it creates an inference, not a presumption, of negligence which can be accepted or rejected by the jury. There was adequate evidence to support the jury verdict, and substantial justice was done.

Affirmed.

·STEVENS, P. J., and CASE, J., concur.